**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREW PULIDO (#B57695), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 12 C 7209 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| STEPHANIE DORETHY, Warden, Hill | ) | |
| Correctional Center,[1] | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

After pro se petitioner Andrew Pulido filed his petition for a writ of habeas corpus under 28 U.S.C. § 2254(d)(1), the Court stayed this case while Pulido's state court post-conviction petitions were pending. The Court lifted the stay in January 2018, and Pulido's petition is now ready for review. For the following reasons, the Court denies Pulido's habeas petition and declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2).

**Background**

When considering habeas petitions, federal courts presume the factual findings made by the last state court to decide the case on the merits are correct unless the habeas petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Sims v. Hyatte*, 914 F.3d 1078, 1095 (7th Cir. 2019). Since Pulido has failed to provide clear and convincing evidence to rebut this presumption, the following factual background is based on the Illinois Appellate Court's decisions.

On September 10, 2002, police found Pulido's estranged wife, Dana Wolf-Pulido, strangled to death in her apartment. Police arrested Pulido in September 2003, and Pulido was charged with his wife's murder. Following a jury trial in the Circuit Court of Cook County, Criminal Division,

---

[1] Pulido is presently incarcerated at Hill Correctional Center, and therefore, the proper Respondent is Stephanie Dorethy, Warden. *See* Fed.R.Civ.P. 25(d).

Pulido was found guilty of first degree murder. On September 20, 2005, the Circuit Court sentenced Pulido to fifty-seven years and four months in prison.

In November 2005, Pulido appealed his conviction and sentence to the Illinois Appellate Court arguing that the Circuit Court improperly: (1) disallowed cross-examination of the State's DNA expert concerning her theft conviction; (2) excluded evidence of a prior domestic violence incident between the Wolf-Pulido and her ex-boyfriend; and (3) considered a victim impact statement at sentencing. On May 16, 2008, the Illinois Appellate Court affirmed Pulido's conviction and sentence. Pulido then filed a pro se petition for leave to appeal ("PLA") to the Illinois Supreme Court on September 19, 2008, raising the claims that the Circuit Court improperly excluded evidence of the prior domestic violence incident between the victim and her ex-boyfriend and considered a victim impact statement at sentencing. The Illinois Supreme Court denied Pulido's PLA on November 26, 2008.

In May 2009, Pulido, by counsel, filed a post-conviction petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.* In his petition, Pulido asserted that his trial counsel was constitutionally ineffective for failing to: (1) interview prosecution and defense witnesses; (2) rebut the prosecution's DNA evidence; (3) file a motion to reconsider his sentence; and (4) consider, investigate, or present evidence of Pulido's mental state and ingestion of psychotropic drugs at the time of the murder and trial. Pulido also argued that his appellate counsel was constitutionally ineffective for failing to challenge the admissions of other crime evidence and trial counsel's inadequate performance.

The Circuit Court dismissed this post-conviction petition at the first stage of the proceedings. Pulido then appealed to the Illinois Appellate Court, which affirmed the Circuit Court's dismissal on June 24, 2011. Pulido, by counsel, filed a PLA with the Illinois Supreme Court arguing that the lower state courts applied the wrong legal standard in dismissing his ineffective

assistance of counsel claim with respect to his mental state and use of psychotropic medications. On November 30, 2011, the Illinois Supreme Court denied Pulido's post-conviction PLA.

In May 2012, Pulido sought leave to file a successive post-conviction petition that the Circuit Court denied in September 2013. The Illinois Appellate Court affirmed the Circuit Court on August 18, 2016. Pulido did not file a PLA from the appellate court's judgment. In April 2017, Pulido requested leave to file a second successive post-conviction petition that the Circuit Court denied in May 2017. According to Pulido's letters to this Court, he is not raising any new claims in this second successive post-conviction petition, but instead is arguing that his other post-conviction proceedings were fundamentally flawed.

**Legal Standards**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court can grant habeas relief if the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019). The Supreme Court has explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams,* 529 U.S. at 405. Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *Id.* at 407.

"[A] state prisoner must exhaust his remedies in state court before seeking [habeas] relief in federal court." *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018). "Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, is the duty to

fairly present his federal claims to the state courts." *King v. Pfister,* 834 F.3d 808, 815 (7th Cir. 2016) (citation omitted). Specifically, a habeas petitioner must fully and fairly present his federal claims through one full round of state court review before he files a federal habeas petition. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). "If the petitioner fails to present a claim to the state courts, that claim is procedurally defaulted, and a federal habeas court cannot review it absent 'cause and prejudice' or a miscarriage of justice (meaning conviction of an innocent person)." *Reynolds v. Hepp*, 902 F.3d 699, 705 (7th Cir. 2018).

**Discussion**

Construing Pulido's pro se habeas petition liberally, *see Lund v. United States,* 913 F.3d 665, 669 (7th Cir. 2019), he contends that: (1) the trial court erred in granting the State's motion in limine to bar defense counsel from cross-examining the State's DNA witness about her theft conviction denying him his Sixth Amendment right to confrontation; (2) the trial court's denial of defense's motion in limine to allow questioning of Wolf-Pulido's ex-boyfriend about a prior domestic violence incident denied Pulido his right to confrontation and right to present a defense; and (3) various claims of ineffective assistance of counsel.

*Procedurally Defaulted Claims*

Pulido has procedurally defaulted several of his habeas claims by failing to properly present them through one full round of review in the Illinois courts, including in a PLA to the Illinois Supreme Court. Specifically, because Pulido did not raise his argument that the trial court erred by disallowing cross-examination of the State's DNA expert concerning her theft conviction in his direct appeal PLA to the Illinois Supreme Court, he has procedurally defaulted this claim. Similarly, all of Pulido's ineffective assistance of trial counsel claims, except one discussed in detail below, are procedurally defaulted because Pulido failed to raise them in his post-conviction PLA to the Illinois

Supreme Court. Likewise, Pulido procedurally defaulted his ineffective assistance of appellate counsel claim for failing to raise it in his post-conviction PLA.

The Court can review the merits of Pulido's defaulted claims if he establishes an exception to his procedural default. Reviewing his pro se filings and letters liberally, Pulido asserts that he is actually innocent, which is also known as the fundamental miscarriage of justice exception to procedural default. "A claim of actual innocence must be both credible and founded on new evidence." *Arnold v. Dittmann*, 901 F.3d 830, 836 (7th Cir. 2018). "To be credible, the claim must have the support of 'reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.'" *Id.* (citation omitted). The evidence also must be new, namely, it was not presented at trial. *Id.* at 836-37; *see also House v. Bell,* 547 U.S. 518, 537, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). It is Pulido's burden to show that in light of this new evidence, it is more likely than not that no reasonable juror would have found him guilty of first degree murder. *See McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013).

Pulido has not presented any new evidence that was not presented at trial. Instead, he asserts that he is actually innocent based on the affirmative defense of involuntary intoxication because he was taking psychotropic medications during the time of the incident. Pulido's argument is without merit because an affirmative defense may amount to legal or technical innocence, but not actual innocence. *Britz v. Cowan*, 192 F.3d 1101, 1103 (7th Cir. 1999); *see also Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (actual innocence means "factual innocence, not mere legal insufficiency.").

*Merits Discussion*

The Court turns to Pulido's properly exhausted claim that the trial court's denial of his motion in limine to allow questioning of the victim's ex-boyfriend, Alexander Dee, about a prior domestic violence incident denied Pulido his Sixth Amendment right to confrontation and right to

present a defense.  The Illinois Appellate Court addressed the merits of this argument on direct

appeal explaining:

> The incident to which [Pulido] refers occurred on March 26, 1997.  On that date
> police responded to a domestic disturbance between the victim and Dee.  According
> to defense counsel, the police report indicated that Wolf-Pulido claimed Dee had
> choked her.  There was no evidence presented that Wolf-Pulido pressed charges or
> that she pursued the incident in court.  Nevertheless, [Pulido] claimed evidence of
> this incident was relevant to establish that Dee, rather than [Pulido], may have
> committed the murder, and further was relevant to impeach Dee in showing that he
> may have had a motive to testify falsely against [Pulido] in order to cast suspicion
> away from himself and onto [Pulido].  The trial court disagreed, finding that the
> incident was too remote and too speculative to have any relevance as to whether
> someone other than [Pulido] committed the murder.

(R. 47-1, Ex. A, 5/16/08 Order, at 15-16.)

In affirming the trial court's decision that the 1997 incident was too remote and speculative,

the Illinois Appellate Court considered Pulido's argument that because Dee had been involved in a

domestic dispute five years before the Wolf-Pulido's murder, Dee was under police suspicion for the

murder.  In rejecting this argument, the appellate court reasoned:

> [Pulido] presents no other evidence besides the domestic dispute tending to show
> that Dee was under police suspicion in connect with Wolf-Pulido's murder….
> Reliance on this one incident to show Dee was under police suspicion is much too
> speculative, especially in light of the fact that there are no other factors
> accompanying this incident that connect Dee to Wolf-Pulido's murder.  [Pulido] fails
> to show how the 1997 incident would reasonable tend to indicate that Dee's
> testimony might be influenced by a motive to testify falsely.

(*Id.* at 22.)

Turning to whether this analysis is contrary to or an unreasonable application of clearly

established Supreme Court precedent, Pulido's appellate counsel argued that a primary interest

secured by the Sixth Amendment right to confront witnesses is the right of cross-examination.

*Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965).  Counsel further

relied on the Supreme Court's decision in *Davis v. Alaska* which held "the exposure of a witness'

motivation in testifying is a proper and important function of the constitutionally protected right of

cross-examination." 415 U.S. 308, 316-17, 94 S.Ct. 1105, 39 L.Ed. 2d 347 (1974). A defendant's

right to confront witnesses against him, however, has limits:

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment
> prevents a trial judge from imposing any limits on defense counsel's inquiry into the
> potential bias of a prosecution witness. On the contrary, trial judges retain wide
> latitude insofar as the Confrontation Clause is concerned to impose reasonable limits
> on such cross-examination based on concerns about, among other things,
> harassment, prejudice, confusion of the issues, the witness' safety, or interrogation
> that is repetitive or only marginally relevant.

*Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Also, it is clearly

established under Supreme Court law that third-party culpability evidence "may be excluded where it

does not sufficiently connect the other person to the crime, as, for example, where the evidence is

speculative or remote, or does not tend to prove or disprove a material fact in issue at the

defendant's trial." *Holmes v. South Carolina*, 547 U.S. 319, 327, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006)

(citation omitted).

Under this precedent, the Illinois Appellate Court's decision concerning Pulido's

confrontation clause claim was not an unreasonable application of clearly established Supreme Court

law because it is not "well outside the boundaries of permissible differences of opinion." *Felton*, 926

F.3d at 464 (citation omitted). Pulido's argument that the trial court's ruling denied him the right to

present a defense fares no better under *Holmes* and its progeny because the "constitutional right to

present a defense" is "not absolute; a judge may exclude evidence that is cumulative or only

marginally relevant." *United States v. Peterson*, 823 F.3d 1113, 1123 (7th Cir. 2016) (citing *Holmes*, 547

U.S. at 324).

Next, the Court turns to Pulido's argument that his trial counsel was constitutionally

ineffective because counsel failed to consider, investigate, or present evidence of Pulido's mental

state and ingestion of psychotropic drugs at the time of the murder and trial. The clearly established

Supreme Court law at issue is *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984). Under *Strickland*, to establish ineffective assistance of counsel in violation of the Sixth

Amendment, Pulido must show (1) his trial attorney's performance "fell below an objective standard

of reasonableness," informed by "prevailing professional norms" and (2) "but for counsel's

unprofessional errors the result of the proceeding would have been different." *Id.* at 688, 694.

Under the performance prong, there is a strong presumption that counsel's conduct falls within a

wide range of reasonable professional assistance. *Laux v. Zatecky*, 890 F.3d 666, 674 (7th Cir. 2018).

Under the *Strickland* prejudice prong, it is not enough "to show that the errors had some conceivable

effect on the outcome of the proceeding," rather, Pulido must demonstrate "a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* at 693, 695. As the Supreme Court teaches, because the "standards created by

*Strickland* and § 2254(d) are both 'highly deferential,' when applying 'the two in tandem, review is

'doubly so.'" *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011) (citations

omitted).

The post-conviction Illinois Appellate Court addressed the merits of Pulido's ineffective

assistance of trial counsel claim concerning Pulido's mental health issues reasoning:

> [Pulido] has not presented a reasonable basis in law for his assertion that
> counsel was ineffective for failing to investigate or present evidence of his depression
> and psychotropic drug usage. At the outset, we note that [Pulido] does not provide
> an explanation of how he was prejudiced by his counsel's failure in this regard,
> except for vague assertions that this information would have "impacted" upon an
> unnamed affirmative defense and that it could potentially have constituted
> "mitigating circumstances." Furthermore, [Pulido] has failed to set forth the gist of a
> claim that his trial counsel was deficient for failing to pursue his mental state as an
> avenue of defense. Decisions concerning which witnesses to call at trial and what
> evidence to present on behalf of a defendant are matters of trial strategy, and, as
> such, they are generally immune from claims of ineffective assistance of counsel.
> The only exception to this rule is when counsel's chosen strategy "is so unsound that
> counsel entirely fails to conduct any meaningful adversarial testing." In this case, it is
> apparent from the record that [Pulido's] trial counsel was aware of his history of
> depression and his hospitalization and, in fact, attempted to cross-examine State
> witness [Dr.] Ahmad [Pulido's treating physician] about these matters. The record
> also shows that trial counsel chose to strategically downplay the significance of
> [Pulido's] alleged suicide attempt six days after the murder, eliciting testimony from

> Ahmad that [Pulido] never told him that he wanted to die or that he was trying to kill himself. Thus, it cannot be said that he failed to conduct any meaningful adversarial testing in this regard, or that his strategy was so unsound that it would constitute ineffective assistance of counsel.

*People v. Pulido*, No. 1-09-2464, 2011 WL 9753302, at *12 (1st Dist. June 24, 2011) (internal citations omitted).

The Illinois Appellate Court's analysis is not contrary to or an objectively unreasonable application of *Strickland*. *See Harrington*, 562 U.S. at 103 (to be objectively unreasonable, state court ruling must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). The Illinois court concluded trial counsel was aware of Pulido's mental health issues and made strategic decisions in how to approach these issues. Under *Strickland*, there is a strong presumption that attorneys engage in reasonable trial strategies, and here, Pulido has not presented evidence or arguments to overcome this presumption. *See Mosley v. Atchison*, 689 F.3d 838, 848 (7th Cir. 2012) ("To avoid the inevitable temptation to evaluate a lawyer's performance through the distorting lens of hindsight, *Strickland* establishes a deferential presumption that strategic judgments made by defense counsel are reasonable."). Equally important, Pulido failed to sufficiently articulate how he was prejudiced by counsel's allegedly deficient performance.

Next, the Illinois Appellate Court addressed Pulido's argument that his trial counsel was ineffective for failing to request a fitness hearing:

> [Pulido] has not presented a reasonable basis in fact or in law to show that his counsel was ineffective for failing to request a fitness hearing. With regard to the facts, [Pulido] has not provided any evidence that he was depressed and under the effects of psychotropic drugs at the time of trial, which took place in August 2005. All of [Pulido's] medical records pertain to 2002, except for the followup assessment conducted by Dr. McKenna in February 2003. [Pulido] does not even assert in his affidavit that he was depressed or taking psychotropic drugs at the time of trial. Furthermore, [Pulido] does not assert that his condition in any way affected his ability to understand the proceedings at trial, nor does he present any documentation from which such a conclusion might be inferred. A defendant is unfit to stand trial if, due to a mental or physical condition, he or she is unable to understand the nature

and purpose of the proceedings or to assist in the defense. The trial court is only required to order a fitness hearing if a bona fide doubt is raised as to the defendant's fitness. Absent any indication that [Pulido] had a diminished capacity to understand the proceedings at trial, there is no reasonable basis in law for his implication that his trial counsel was ineffective for failing to inquire further into his mental condition and request a fitness hearing.

*Pulido*, 2011 WL 9753302, at \*12 (internal citations omitted).

In short, the Illinois Appellate Court concluded there was no factual or legal basis for a fitness hearing, and it is well-settled that "an attorney is not ineffective for failing to raise a meritless argument." *Washington v. Boughton*, 884 F.3d 692, 701 (7th Cir. 2018). Because Pulido's fitness hearing argument is without merit, he is not entitled to habeas relief based on his related claim of ineffective assistance of counsel. *See Carrion v. Butler*, 835 F.3d 764, 778 (7th Cir. 2016).

**Certificate of Appealability**

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003). Rather, a habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Id.* at 336; 28 U.S.C. § 2253(c)(2). Under this standard, Pulido must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (citation and quotation marks omitted).

Pulido has not established that reasonable jurists would debate that the Court erred in concluding that the Illinois Appellate Court did not unreasonable apply clearly established Supreme Court law to his ineffective assistance of counsel and confrontation clause/right to defense claims. As such, the Court declines to certify any issues for appeal. 28 U.S.C. § 2253(c)(2).

**Conclusion**

For these reasons, the Court denies petitioner's petition for a writ of habeas corpus and declines to certify any issues for appeal. *See* 28 U.S.C. §§ 2253(c)(2), 2254(d).

SO ORDERED.

Sharon Johnson Coleman
United States District Judge

DATED: 10/28/2019